IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHADEE ABUSAAB )<br>)<br>            Plaintiff, )<br>)<br>   vs. )<br>)<br>EQUIFAX INFORMATION SERVICES LLC, )<br>et al. )<br>)<br>            Defendants. )<br>) | Civil Action No. 05-5094 |

**PLAINTIFF SHADEE ABUSAAB'S MEMORANDUM OF LAW IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Shadee Abusaab, through counsel, respectfully submits this Memorandum of Law in opposition to Equifax Information Services LLC's ("Equifax") Motion for Partial Summary Judgment ("Motion").[1] For the numerous reasons stated below, Equifax's Motion should be denied and Plaintiff's claims must proceed to a jury trial.

### I.   INTRODUCTION

Shadee Abusaab filed this action against Equifax to recover for the damages that he suffered as a result of Equifax's unlawful credit reporting practices. Equifax is one of the country's three major consumer reporting agencies ("CRAs").[2] Plaintiff's Complaint asserts that Equifax violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, as amended, both willfully and negligently, and presents several state law claims as well. As Equifax has only moved for partial summary judgment, and has not challenged Plaintiff's claim that it negligently violated the FCRA or Plaintiff's claim for actual damages, Plaintiff confines

---

[1]   Equifax is the only Defendant remaining in this action, as the other Defendant, Experian Information Solutions, Inc., has settled.

[2]   The term "consumer reporting agency" is the actual definitional term used in the FCRA. *See* 15 U.S.C. § 1681a(f). CRAs are also colloquially referred to as "credit reporting agencies" or "credit bureaus." Plaintiff uses these terms interchangeably in this memorandum.

his memorandum to a discussion of the willfulness and preemption arguments that Equifax has raised.[3]

This case arises from Equifax's conduct in wrongfully reporting a $37,500 civil judgment (the "judgment") from the Court of Common Pleas of Philadelphia County ("CCP") on Plaintiff's credit report despite having knowledge of its inaccuracy.[4]  There is no dispute that the judgment should not have appeared on Plaintiff's credit report after February 2005.[5]  The horrendously derogatory judgment prevented Plaintiff from buying a home for his family in the summer of 2005, and not surprisingly, caused Plaintiff to suffer other significant economic and non-economic harm as well.

However careless Equifax's reporting of the judgment may have been initially, it is Equifax's actions following Mr. Abusaab's multiple disputes of the judgment that provide a solid evidentiary foundation for Plaintiff's willfulness claim.  The factual record demonstrates that on two separate occasions in June and July of 2005, Equifax falsely represented to Mr. Abusaab that in the process of investigating his disputes, it had "contacted" the "source" of the judgment, which it identified as the "Philadelphia County Court."  These statements were totally false. Equifax had never contacted anyone, much less the Philadelphia Court of Common Pleas, regarding Mr. Abusaab's dispute.  Nor were Equifax's misstatements innocent, as discovery has

---

[3]   As discussed *infra*, Equifax also moved on Plaintiff's Pennsylvania Unfair Trade Practices and Consumer Protection Law claim.  As Plaintiff withdraws that claim, Equifax's argument as to that issue is moot.

[4]   Civil judgments against a consumer may be reported on the consumer's credit report for up to ten years. *See* 15 U.S.C. § 1681c(a)(2).  Credit reports generally do not report judgments that a consumer has won.

[5]   The judgment relates to a personal injury action that arose from a motor vehicle accident in which Mr. Abusaab was rear-ended.  Initially, for some reason, the judgment was reported against Mr. Abusaab, but it was vacated upon an appeal.  Following an arbitration, a judgment was entered in Mr. Abusaab's favor.  Equifax does not dispute that the judgment should not have reported at all on Mr. Abusaab's report after it was appealed in February 2005.  Equifax reported the judgment as one against Mr. Abusaab from January 2005 through December 2005, when it was finally corrected as a result of this litigation.

revealed that Equifax never contacts a court regarding a consumer's dispute of a public record. Equifax's deliberate misrepresentations to Mr. Abusaab concerning what it did to investigate his disputes and its concealment of its actual activities alone present genuine issues of material fact that Equifax willfully violated the FCRA according to any application of our Circuit's well-defined standard for FCRA willfulness claims.

The record also presents additional independent bases to support a jury finding that Equifax willfully violated the FCRA. In response to another of Mr. Abusaab's disputes, Equifax informed Mr. Abusaab that it had conducted a reinvestigation (again listing the Philadelphia County Court as its source), but this time that it had "verified" the accuracy of the $37,500 judgment against him with the courthouse. This was also untrue. What Equifax did was follow its usual policy and simply sent a one-page form to the public records vendor from whom it had originally obtained the judgment and "parrot" the same inaccurate information that it received back from the vendor on Plaintiff's credit report. Additionally, while Plaintiff had actually provided Equifax with court records demonstrating its gross error (clearly showing that the judgment had been entered in his favor by this time), Equifax never even bothered to pass these pivotal documents along to the vendor because it never forwards such documents to an information furnisher as a matter of practice.[6]

These specific practices by Equifax -- deliberately misrepresenting its activities and systematically failing to investigate a consumer's dispute and forward the relevant information he has provided to the information furnisher -- readily meet the "reckless disregard" standard for willfulness established by the Third Circuit in the seminal case of *Cushman v. Trans Union*

---

[6] As part of its statutory duty in reinvestigating a consumer dispute, a CRA is required to forward "all relevant information" that it receives from the consumer to any entity (including public records vendors) that provided any item of information in dispute. *See* 15 U.S.C. § 1681i(a)(2)(A). As discussed, *infra*, this includes documents that the consumer sends with a dispute.

*Corp.*, 115 F.3d 220, 227 (3d. Cir. 1997).  In denying Equifax's willfulness challenge, this Court will not be carving any new ground or expanding *Cushman*.  Indeed, each time courts within this Circuit have examined similar practices by a CRA, they have held that such practices presented evidence from which a reasonable jury could reach a finding of willfulness.[7]  This Court may also find Judge Brody's reasoning in *Lawrence v. Trans Union, LLC*, 296 F. Supp. 2d 582 (E.D. Pa. 2003) instructive.  *Lawrence* is an FCRA case involving a disputed judgment in which the court rejected virtually identical arguments concerning willfulness asserted by CRA Trans Union at summary judgment on the basis of similar systemic practices and facts.[8]

In sum, Plaintiff presents solid evidence from which a jury could conclude that Equifax committed a willful violation of the FCRA.  For this reason and the others discussed below, Plaintiff's state law claims should survive summary judgment as well.   As such, Equifax's Motion should be denied in its entirety.

---

[7]     *See, e.g., Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311 (E.D. Pa. 2003) (finding evidence of willfulness against a CRA where it failed to forward a consumer's dispute documentation to the furnisher and had a policy of parroting information from furnisher in investigation) (Dalzell, J.); *Evantash v. G.E. Capital Mortgage Servs., Inc.*, Civ. No. 02-1188, 2003 WL 22844198 (E.D. Pa. Nov. 25, 2003) (CRA summary judgment motion denied as to willfulness and punitive damages in FCRA case) (Davis, J.); *Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 (E.D. Pa. July 24, 2003) (CRA summary judgment motion denied as to willfulness and punitive damages in FCRA case) (Schiller, J.).

[8]     Courts from other federal districts have also permitted FCRA willfulness claims to proceed to trial as to this particular defendant.  *See Apodaca v. Discover Fin. Servs. et al*, ___ F.Supp. 2d ___, Civ. No. 04-0717, 2006 WL 538667 (D.N.M. Mar. 2, 2006) (denying Equifax's motion for partial summary judgment and permitting consumer to proceed to trial with willfulness/punitive damages claim stemming from improper investigation procedures); *Sampson v. Equifax Info. Servs. LLC*, Civ. No. 204-187 (S.D. Ga. Aug. 29, 2005) (denying Equifax's motion for summary judgment and permitting consumer to proceed to trial with willfulness/punitive damages claim stemming from Equifax's improper investigation procedures).

II.     **COUNTER-STATEMENT OF FACTS**

A.      **Equifax Ignores Plaintiff's Repeated Attempts To Correct The Inaccurate Reporting Of The Judgment**

Following a car accident in front of Philadelphia City Hall -- where another car crashed into Plaintiff's car from the rear -- it appears that Mr. Abusaab was sued in the Philadelphia CCP.  (Plaintiff's Dep. at 72-73, 75-76) (attached hereto as Exhibit A).   Plaintiff never received notice of that action and knew nothing about it until he saw a $37,500 judgment reporting against him on his Equifax credit report in January 2005.  (Plaintiff's Dep. at 73, 75-76).  Immediately, Plaintiff retained counsel and the judgment was appealed and vacated as of February 2005.  (Plaintiff's Dep. at 76-78); (*see also* CCP Notice of Appeal, presented for review January 7, 2005, attached hereto as Exhibit B).  He then won the case and the judgment was entered in his favor.  (*See* Exhibit E, *infra*).

Equifax's Director of Consumer Customer Care Alicia Fluellen[9] conceded that following a Notice of Appeal a judgment should no longer be reporting against a consumer: "what should have happened was the very first time we received the Notice of Appeal, it should have been removed from the credit file.  But that didn't happen."  (Fluellen Dep. at 81; *see also* id. at 82, conceding Equifax's reporting post-appeal was erroneous) (attached hereto as Exhibit C).

Plaintiff testified at his deposition that he waited for the order vacating the judgment and contacted Equifax to ask that the judgment be removed from his credit file in February 2005.  (Plaintiff's Dep. at 74-75).  Plaintiff had started looking to purchase a home in the spring of 2005 and knew that a recent $37,500 judgment against him would be a major obstacle, which in fact it was.  (Plaintiff's Dep. at 45-51).  Equifax claims that it never received notice of that dispute.  (Def. Mem. at 4-5).

---

9       Fluellen was produced for deposition by Equifax as a Rule 30(b)(6) corporate representative.

It is uncontested that Equifax received three subsequent disputes from Plaintiff requesting that it cease reporting the $37,500 judgment against him on his file -- a June 8, 2005 letter, a July 21, 2005 letter and an August 8, 2005 telephone call.  (*See* Def. Mem. at 3-4).  Importantly, with the June 8 letter Plaintiff himself sent Equifax a copy of the Notice of Appeal.  (*See id.*; *see also* Plaintiff's 6-8-05 letter to Equifax and supporting documentation, attached hereto as Exhibit D). With his July 21 dispute letter Plaintiff also included a copy of the Report and Award of Arbitrators from the appeal (entered June 22, 2005), which stated on its face that "We find in favor of Defendant[] Shadee Abusaab."  (*See id.; see also* Plaintiff's 7-21-05 letter to Equifax and supporting documentation, attached hereto as Exhibit E) (emphasis added).  At no time did Equifax forward these court records to the public records vendor from whom it obtained information about the judgment.  (*See* Fluellen Dep. at 28-29, 76, 85-94).

Despite Plaintiff's repeated disputes and his supporting court papers, Equifax continued to report the $37,500 judgment against Plaintiff through the time of this lawsuit, finally supplying Plaintiff with a corrected credit file in December 2005.  (*See* Fluellen Dep. at 95, 115-16; and also at 103-04).

      **B.**    **Equifax Falsely Informed Mr. Abusaab That It Had Contacted The Philadelphia County Court Concerning His Disputes When It Had Not**

In connection with Mr. Abusaab's June and July 2005 written disputes concerning the judgment, Equifax wrote to Mr. Abusaab to explain the results of its investigation.[10]  (*See* Investigation Results dated 6-24-05, attached hereto as Exhibit F); (*See* Investigation Results dated 7-29-05, attached hereto as Exhibit G).  In its letters, Equifax advised Mr. Abusaab that its "investigation [was] completed" and that it had "contacted each source [of the disputed

---

[10]    Equifax's sending letters to Mr. Abusaab was not gratuitous.  The FCRA requires that, following an investigation of a consumer dispute, a CRA must provide the consumer with written notice of the results of the investigation.  15 U.S.C. § 1681i(a)(6).

judgment] *directly*." *Id.* (emphasis added). The letters listed the source it contacted as the "Philadelphia Cty Court, Broad & Market STS." *Id.*[11]

However, at her deposition, after several evasive answers, Equifax's corporate representative admitted that neither Equifax nor anyone acting on its behalf ever contacted the Philadelphia County Court:

```
19   Q.   Okay.  So this is not true when it says on
20   this letter that the Philadelphia City Court, Broad
21   and Market Street in Philadelphia was contacted by
22   Equifax in connection with this investigation?
23          MR. PERLING:  Objection to form.
24    Misstates evidence.  The best evidence is this
25     exhibit, and it does not say what you just said
 1     your question.
 2          THE WITNESS:  Yeah, it doesn't say that.

 3   Q.   (By Mr. Soumilas)  What's the answer to
 4   that question, ma'am?  Was that court, the
 5   Philadelphia County Court ever contacted by Equifax
 6   or any of its vendors or anyone on its behalf in
 7   connection with the investigation of this June 8th,
 8   2005 dispute?
 9   A.   No.
```

(*See* Fluellen Dep. at 70-71; *see generally* 65-71, 76-81). In fact, Equifax never contacted anyone regarding Mr. Abusaab's June 8th dispute, including the public records vendor from whom it obtained the judgment in the first place, and did nothing to investigate Mr. Abusaab's disputes besides look at Plaintiff's dispute correspondence. (*Id.*); (*see also* Def. Mem. at 3-4).

---

[11] Specifically, both the June 24 and July 29 Equifax letters stated as follows under the "Notice to Consumers" section: "The name, address, and, if reasonably available, the telephone number of the furnisher(s) of the information <u>contacted</u> while processing your dispute is shown under the 'Results of Your Investigation' section of the cover letter and accompanies the copy of your revised credit file." (*See* Exhibit F & G at pg. 2 of 8 on each letter) (emphasis added). The name and address provided in each instance was "Philadelphia Cty Court, Broad & Market STS, Philadelphia, PA 19107." (*See* Exhibit F & G at pg. 1 of 8 on each letter). There was no telephone number provided.

Equifax actions regarding the Mr. Abusaab's July 2005 dispute were no different. Even though it informed Mr. Abusaab that it contacted the Philadelphia County Court, it did not contact anyone. (*See* Fluellen Dep. at 76-82); (*see also* Exhibit G); (*see also* Def. Mem. at 3-4). In "investigating" these two disputes Equifax did nothing besides misread Plaintiff's supporting court papers (*see* Fluellen Dep. at 65-71, 80-81) and then falsely stated in standard letters that it had investigated the dispute by contacting the Philadelphia CCP. (*See id*. at 118-19); (*see also* Def. Mem. at 3-4).

With respect to Plaintiff's August 2005 dispute, Equifax sent Plaintiff a similar type of letter with its purported "investigation" results. (*See* Investigation Results dated 8-13-05, attached hereto as Exhibit H). That letter also informed Plaintiff that Equifax had contacted the Philadelphia County Court "directly." (*Id.* at pgs. 1 and 2 of 8). Again, this was not true:

```
25    Q.    And then it says, NDR courier will pick
 1    up, Philadelphia, Pennsylvania 19107.  Was there ever
 2    any communication concerning this dispute by Equifax
 3    directly to any court in Philadelphia?
 4       A.    Not that I can tell here by looking at the
 5    documents, no.
```

(Fluellen Dep. at 88). While this time Equifax actually contacted its public records vendor that supplied the judgment to it in connection with the August 2005 dispute, Equifax does not know whether the vendor ever contacted the Philadelphia CCP. (Fluellen Dep. at 37, 106-07, 121).

In discovery, Plaintiff learned the true reality behind where and how Equifax obtains it public records information and what it really did in terms of responding to Mr. Abusaab's disputes. Equifax does not obtain its public records data from the Philadelphia CCP; it obtains it from an independent vendor. (Fluellen Dep. at 86). Likewise, in the instances when it actually contacts anyone in reference to a consumer's dispute, it only contacts the vendor, never the court. (*See* Fluellen Dep. at 31-34, 69-71, 88); (*see also id.* at 98) ("we will stipulate that NDR is the

8

company that provided the information to Equifax from the courthouse"). Yet Equifax, as a matter of routine practice, represents to consumers such as Mr. Abusaab that it has contacted the court directly, and conceals from consumers the true source of the information that it is reporting about them and the actions it takes in response to a dispute, even though it is required to fully disclose this information to consumers by law. (*See generally* Fluellen Dep. at 31-34; 82-99). Equifax's letters to consumers misinform them that the entity that is supplying the judgment information is really the courthouse, and that Equifax had "contacted" the courthouse "directly" in order to verify the records when a consumer contacts it about a dispute. (*See generally* Fluellen Dep. at 31-34, 82-99, 118-19); (*see also* Exhibits F, G and H).

      **C.    Equifax's "Parroting" Practices Under The Circumstances Of This Case Further Demonstrate Its Reckless Disregard For Consumer Rights**

When Equifax actually looks into a consumer dispute concerning a judgment by doing anything other than looking at its own records and the consumer's correspondence, it generally contacts the credit furnisher who provided it with the disputed credit information in the first instance. (Fluellen Dep. at 34-37, and generally at 26-37). Then Equifax reports on the consumer file what its credit furnisher (in this case, a public records vendor) tells it to report, without conducting any independent investigation or doing anything further besides parroting the word of its credit finisher. (Fluellen Dep. at 34-37, 94).

Importantly, Equifax does not forward any letter or supporting documentation that a consumer submits with his or her dispute to the credit furnisher that is supplying the disputed information to Equifax in the first instance. (Arnold Dep. pp. 71-72)[12]; (*see generally* Fluellen Dep. at 29, 76). Thus a consumer's supporting documentation (such as the Notice of Appeal and

---

[12]     A true and correct copy of the pages from Corliss Arnold's deposition testimony of May 26, 2004, that are cited herein are attached hereto as Exhibit I. Ms. Arnold is Director of Consumer Services and oversees Equifax's consumer dispute department along with Alicia Fluellen. (Arnold Dep. at 6-7, 14).

9

the Report and Award of Arbitrators that Plaintiff sent to Equifax) remains archived with Equifax but are not forwarded on to the furnisher as a matter of course. (*Id.*).

Despite depriving its credit furnishers of this type of vital information and supporting documentation, Equifax limits its "investigation" to a one-page form called a "CDV" (or "ACDV" when the form is automated or in electronic format) communication with the furnisher and does nothing further. (*See* Fluellen Dep. in *Sheffer* at 85-86, 97-99, 105);[13] (*See* Arnold Dep. at 97-104). Thus, when a furnisher such as a public records vendor responds to a CDV form simply by checking the "verified" as accurate box, Equifax will do nothing other than publicize on the consumer's credit report the information that the furnisher states. (*Id*). Ms. Fluellen's deposition testimony concerning Equifax's parroting procedures, cited above, is the very basis that led Judge Schiller in *Sheffer* to allow a willfulness claim and punitive damages to be presented to the jury against Equifax in that case. *See Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 at * 3 (E.D. Pa. July 24, 2003) (citing Ms. Fluellen's deposition testimony).

---

[13]  A true and correct copy of the pages from Alicia Fluellen's deposition testimony in *Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, that are cited herein are attached hereto as Exhibit J. *Sheffer* was an FCRA case where Ms. Fluellen testified about Equifax's investigative procedures (hereinafter cited as "Fluellen Dep. in *Sheffer*"). Ms. Fluellen's testimony in *Sheffer* about Equifax's investigative procedures and policies is also cited herein because it is clearly relevant to this action. Since the present Equifax attorneys defended the *Sheffer* deposition, and thus had a full and fair opportunity to develop Ms. Fluellen's testimony, and since the deposition testimony concerns substantially similar issues as those in the present case, the testimony is appropriate for purposes of this motion as it would be at trial. *See* Fed. R. Civ. P. 32(a); Fed. R. Evid. 801(d)(2)(D); *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 316 n.6 (E.D. Pa. 2003) (relying on deposition of same corporate representative of consumer reporting agency given in another FCRA case); *Copeland v. Potroleum Transit Co.*, 32 F.R.D. 445, 447 (E.D.S.C. 1963) (deposition taken for use in another case could be used in instant case where substantially same issues were involved and defendant had adequate opportunity to cross-examine deponent with same motive and interest); *see also Gros v. City of Grand Prairie*, 181 F.3d 613, 619 (5th Cir. 1999) (relying on deposition testimony taken in another case to vacate summary judgment); *Donahey v. Wellman*, 687 F. Supp. 195, 196-97 (W.D. Pa. 1988) (relying on deposition taken in parallel case to grant summary judgment); *see generally Aileen Mills Co. v. Ojay Mills, Inc.*, 192 F. Supp 131 (S.D.N.Y. 1960) (deposition taken in prior action by other plaintiffs against same defendants was part of record where submitted to district court upon motion to quash); *Tobacco & Allied Stocks v. Transamerica Corp.*, 18 F.R.D. 355 (D. Del. 1955) (all depositions, exhibits and pleadings from analogous litigation offered by party, over objection of opponent, were accepted and considered admissible).

In this case, Ms. Fluellen confirmed that Equifax's investigation policies are still the same and that Equifax verified the accuracy of the $37,500 judgment in August 2005 simply because its public records vender so stated, and for no other reason. (*See* Fluellen Dep. 8, 93-94). Indeed, when Equifax actually bothered to contact its public record vendor (National Data Retrieval, now ChoicePoint) concerning Mr. Abusaab's dispute in August 2005, Equifax "verified" that the judgment was accurate as one against Mr. Abusaab simply because that is what furnisher National Data Retrieval stated in its CDV form response. Equifax so verified the accuracy of the judgment for no other reasons and despite the clear proof to the contrary that Plaintiff had already supplied to Equifax in June and July 2005 in the form of CCP records. (*See* Fluellen Dep. 94, see generally 29-36); (*see also* National Data Retrieval CDV with response date 8/29/05, attached hereto as Exhibit K).

### III. APPLICABLE STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will only be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). In other words, summary judgment may only be granted if the movant shows, by admissible evidence, that there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998); *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir.), *cert. denied*, 488 U.S. 870 (1988).

The party opposing the motion for summary judgment is entitled to have his/her allegations taken as true, to receive the benefit of the doubt when his/her assertions conflict with

11

those of the movant and to have inferences from the underlying facts drawn in his/her favor. *Big Apple, BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992), *cert. denied,* 507 U.S. 912 (1993). In analyzing the moving party's burden under Rule 56(c), the Third Circuit has stated that "[i]f there is any evidence in the record, from any source, from which a reasonable inference in the respondent's favor may be drawn, the moving party simply cannot obtain a summary judgment, no matter how many affidavits are filed (citations omitted) . . . . The 'burden' then is insurmountable." *In re Japanese Electronic Prods. Antitrust Litig.*, 723 F.2d 238, 258 (3d Cir. 1983), *reversed on other grounds*, 475 U.S. 574 (1986); s*ee also Boyle v. County of Allegheny, Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).

A court may not, at the summary judgment stage, weigh evidence or make credibility decisions. These tasks are left to the factfinder. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir.), *cert. denied*, 510 U.S. 994 (1993). To raise a genuine issue of material fact, the respondent need not match, item for item each piece of evidence proffered by the movant. *Big Apple, BMW, Inc.*, 974 F.2d at 1362-63. As the Third Circuit has explained:

> In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quality of the movant's evidence far outweighs that of its opponent. It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

*In re Unisys Savings Plan Litigation*, 74 F.3d 420, 433 n. 10 (3d Cir. 1996) (citing *Big Apple, BMW*). If there are gaps in the pertinent materials submitted by the movant, without explanation, that justifies denial of the motion. *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir.

1989). In the case at bar, there exist genuine issues of material fact, and Equifax is not entitled to judgment as a matter of law. Summary judgment is therefore inappropriate.

  **IV.**  **ARGUMENT**

Through documents and deposition testimony, Plaintiff clearly has demonstrated that genuine issues of material fact exist as to whether a reasonable jury could find that Equifax's conduct willfully violated the FCRA, and Equifax is not entitled to judgment as a matter of law. Accordingly, Equifax's Motion must be denied.

  **A.**  **There Are Genuine Issues of Material Fact That Equifax's Policies And Practices Led To Willful Violations Of The FCRA**

Equifax argues that it is entitled to summary judgment as to Plaintiffs' FCRA section 1681n claim allegedly because no reasonable jury could find that it acted willfully in violation of the FCRA. (*See* Def. Mem. at 9).

In order to show "willfulness" under the FCRA (which would justify punitive damages among other things), a plaintiff need not show malice, but only that the credit reporting agency "knowingly and intentionally committed an act in conscious disregard for the rights of others." *See Cushman v. Trans Union Corp.*, 115 F. 3d 220, 227 (3d. Cir. 1997*).* Although the terms "willful" or "willfully" are not defined in the FCRA, case law has held that neither malice nor evil motive need be established for a finding of a willful violation. *See Stevenson v. TRW, Inc.*, 987 F.2d 288, 294 (5th Cir.1993) (citing *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir.1983)). Many courts have noted that willful under the Act is demonstrated by a showing of "knowingly and intentionally committed an act in conscious disregard for the rights of others." *See id.* at 293 (citing *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir.1986), *cert. denied*, 483 U.S. 1022 (1987)); *Cushman*, 115 F. 3d at 227; *see also Reynolds v. Hartford Fin. Servs. Group,* 435 F.3d 1081, 1097-99 (9th Cir. 2006) (discussing meaning of "willfully" with

CRA and relying on *Cushman*). Such conscious disregard may be found when a credit reporting agency adopts a policy either knowing it to be in "contravention of the rights possessed by consumers under the FCRA or in reckless disregard for whether the policy contravenes those rights." *Cushman*, 115 F. 3d at 227; *see also Reynolds,* 435 F.3d at 1097-99.

Multiple cases within this District, examining the willfulness standard within the precise context of a CRA's duty to investigate consumer duties, have repeatedly found that a CRA shows a reckless disregard for a consumer's rights when it fails to forward "all relevant information," including documentation that a consumer sends to the CRA in support of his or her dispute, to the furnisher supplying the credit data, as specifically required 15 U.S.C. § 1681i(a)(2)(A). *Lawrence v. Trans Union, LLC*, Civ., 296 F.Supp. 2d. 582, 590, 2003 WL 22992081 at *5 (E.D. Pa. Dec. 11, 2003); *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 321 (E.D. Pa. 2003).

Moreover, multiple cases within this District have held that a consumer may show a willful violation under the FCRA if the CRA has a policy or practice of merely parroting the responses of credit furnishers, rather than conducting an independent investigation as required by 15 U.S.C. § 1681i.  *See Lawrence*, Civ. 296 F.Supp. 2d. 582, 590,  2003 WL 22992081 at * 5; *Evantash v. G.E. Capital Mortgage Servs., Inc*., Civ. No. 02-1188, 2003 WL 22844198 * 8 (E.D. Pa. Nov. 25, 2003); *Crane*, 282 F. Supp. 2d at 321; *Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 at * 3 (E.D. Pa. July 24, 2003) (all claims, including punitive damages, to go to jury in FCRA case against Equifax and other defendants).

Cases from other federal courts have also held that consumers may proceed to trial with their FCRA section 1681n willful claims based upon conduct -- by Equifax -- similar to what courts within the Third Circuit have found could constitute a willful violation of the law.  *See*

*Apodaca v. Discover Fin. Servs. et al.*, ___ F.Supp. 2d ___, Civ. No. 04-0717, 2006 WL 538667 (D.N.M. Mar. 2, 2006) (denying Equifax's motion for partial summary judgment and permitting consumer to proceed to trial with willfulness/punitive damages claim stemming from improper investigation procedures); *Sampson v. Equifax Info. Servs. LLC*, Civ. No. 204-187 (S.D. Ga. Aug. 29, 2005) (denying Equifax's motion for summary judgment and permitting consumer to proceed to trial with willfulness/punitive damages claim stemming from Equifax's improper investigation procedures).

Here, Plaintiff has demonstrated Equifax's "reckless disregard" for consumer rights in several ways.

First, Equifax failed in its duty to conduct an independent investigation by merely parroting its public records vendor's response to its CDV in August 2005 and doing nothing further. The testimony of Equifax's corporate representative Alicia Fluellen has already been the basis for one decision within this District allowing punitive damages against Equifax to proceed to the jury. *See Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 at * 3 (E.D. Pa. July 24, 2003) (citing Ms. Fluellen's deposition testimony and allowing willfulness claim/punitive damages to be presented to the jury due to Equifax's practice and policy of parroting furnisher responses despite consumer disputes). The same testimony, cited herein, is equally applicable to this case as it pertains to Equifax's general policies and practices. (*See* Fluellen Dep. in *Sheffer* pp. 85-86, 97-99, 105).

In this case Ms. Fluellen corroborated that testimony and confirmed that Equifax has not changed its parroting practices. (*See* Fluellen Dep. 4, 36-37, 93-94). Indeed, in August 2005 Equifax conducted no independent investigation whatsoever, despite having received ample notice from Plaintiff by that time, including actual court records, that the $37,500 judgment

should not be reporting against him. Equifax simply parroted the CDV response of its furnisher -- that the judgment should continue to report against Plaintiff, and for only that reason "verified" the judgment's accuracy. That is the essence of parroting. Accordingly, as in *Sheffer*, the issue of willfulness must go to the jury. *See also Lawrence v. Trans Union, LLC*, Civ., 296 F.Supp. 2d. 582, 590, 2003 WL 22992081 at *5 (E.D. Pa. Dec. 11, 2003) (practice or policy of parroting can be willful violation under FCRA); *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 321 (E.D. Pa. 2003) (same).

Second, Equifax repeatedly misrepresented to Plaintiff in its letters that it had "contacted" the Philadelphia CCP at Broad and Market Streets "directly" in processing his disputes. (*See* Exhibit F, G, H). These communications concealed the truth from Plaintiff regarding what Equifax did in its purported "investigation" into Plaintiff's disputes and also concealed who the true source of Equifax's credit data was with respect to judgments (*i.e.*, the public records vendor as opposed to the CCP).[14] The FCRA requires CRAs to identify to consumers the true source of where they are getting credit information. *See* 15 U.S.C. § 1681i(a)(6). Equifax misrepresented that to Plaintiff and did so with standard letters that demonstrate its practice of doing so with these type of disputes. (*See generally* Fluellen dep. at 31-34; 69-71).

Equifax's Ms. Fluellen testified that as a matter of course Equifax does not identify to consumers the true identity of who furnishes public records data to Equifax, as it did not to Plaintiff in this case. (See Fluellen Dep. at 31-34, 86-87, 98). Nor were Equifax's letters isolated mistakes, or mere human error. *Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-

---

[14] Although fraud or misrepresentation is not a requirement of an FCRA willfulness claim, under the "reckless disregard" standard discussed above conduct that is "*on the same order* as willful concealments or misrepresentations" would "justify" an award of punitive damages. *See Cushman*, 115 F. 3d at 227 (citing although declining to adopt holding of *Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993)) (emphasis added).

7407, 2003 WL 21710573 at * 3 (willful claim permitted to go to jury where Equifax's conduct was "not the result of mere human error . . . [that] was promptly cured") (citing *Boris v. Choicepoint Servs.*, 249 F. Supp.2d 851, 862 (W.D. Ky. 2003)).  A reasonable jury could find that Equifax's practice of telling consumers that it "contacted" the Philadelphia CCP at Broad and Market Streets "directly," when in fact it had not, as well as its failure to make sure that the true court records concerning the judgment were actually reviewed as part of its investigation, show a "reckless disregard" for consumer rights.

Finally, Equifax's repeated and systematic failures to stop reporting the judgment as one against Plaintiff after February 2005 is unfathomable when Plaintiff put Equifax on written and oral notice so many times, and when Equifax is supposed to update judgment information with current data almost on a daily basis.  (*See* Fluellen Dep. at 23 and also generally at 14-15, 17-21).

These facts establish that Equifax knowingly and regularly disregards the FCRA's requirements.  Thus, Plaintiff may be permitted to proceed with his willfulness claim to trial.

### B.      Plaintiff's Common Law Claims Are Not Preempted

Equifax contends that Plaintiff should not be permitted to proceed to trial with his common law claims of defamation, negligence and invasion of privacy/false light.  (*See* Def. Mem. at 7).  The entire and exclusive basis for Equifax's preemption argument is that it did not "willfully" violate the FCRA.[15]  For the same reasons that Plaintiff may show willfulness and thus proceed to trial with his FCRA section 1681n claim, discussed above, Equifax's preemption argument fails.[16]

---

[15]      Equifax does not challenge the merits of Plaintiffs' common law claims; it only argues that Mr. Abusaab cannot show willfulness and that his claims are "preempted."

[16]      Unlike other federal statutes that preempt the field, the FCRA has no such broad preemption language.  The

17

Further, the limitations to common law liability set forth at FCRA section 1681h(e), on which Equifax relies, impose a "willfulness" threshold only for actions stemming from disclosures to the consumer, but not all FCRA actions. As one court recently explained:

> Section 1681h(e) suggests not that Congress has limited actions brought in all areas regulated by the FCRA but that defendants will have qualified immunity from actions based on information disclosed pursuant to certain provisions of the FCRA. *Webb v. Bob Smith Chevrolet, Inc.*, 2005 WL 2065237 at *5 (W.D.Ky. Aug. 24, 2005). In *McAnly v. Middleton & Reutlinger, P.S.C.*, 77 F.Supp.2d 810, 814-15 (W.D.Ky.1999), the district court explained that, 'section 1681h(e) is not actually a preemption provision. Rather, it is a quid pro quo grant of protection for statutorily required disclosures. Since various parts of the federal statute require consumer reporting agencies and information users to disclose information to consumers under certain circumstances, this section guarantees that the agencies or users cannot be sued for those required disclosures [under FCRA sections 1681g, 1681h and 1681m] under state tort law. It makes sense that acts required to be done by the FCRA are immunized from state tort liability.'

*Poore v. Sterling Testing Sys., Inc.,* 410 F.Supp. 2d 557, 573 (E.D. Ky. 2006).

Here, Plaintiff's common law claims are based on information provided by Equifax to third parties, such as a prospective mortgage lender and other existing and potential creditors. It is not based on the disclosures to consumers required under sections 1681g, 1681h and section 1681m. Nor is it based on information disclosed by a user of a consumer report. Accordingly, Plaintiff's state law claims are not prohibited under section 1681h(e).

---

FCRA simply imposes a higher scienter standard for certain state common law claims, such as negligence, defamation and invasion of privacy under some circumstances. *See* 15 U.S.C. § 1681h(e). If a plaintiff can proffer evidence creating a genuine issue of fact as to whether the defendant's conduct was willful under the FCRA, the common law claims are appropriate and not preempted. At least four decisions within the Eastern District of Pennsylvania, including decisions against Equifax, have held that a plaintiff in an FCRA case may proceed to trial with his/her common law claims for negligence, defamation and invasion of privacy/false light, so long as those claims are premised upon willful conduct pursuant to FCRA section 1681h(e). *See Lawrence v. Trans Union, LLC*, 296 F.Supp. 2d. 582, 590-591, 2003 WL 22992081 at * 5-6 (E.D. Pa. Dec. 11, 2003) (Brody, J.); *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 321-22 (E.D. Pa. 2003) (Dalzell, J.); *Sheffer v. Experian Info. Solutions, Inc.*, 249 F. Supp.2d 560, 563 (E.D. Pa. 2003) (Schiller, J.); *Sheffer v. Experian Info. Solutions, Inc.*, Civ. No. 02-7407, 2003 WL 21710573 at *3 (E.D. Pa. July 24, 2003) (same) (Schiller, J.).

### C. Plaintiff Withdraws His Claim Under The Pennsylvania Unfair Trade Practices and Consumer Protection Law

Equifax finally contends that Plaintiff should not be permitted to proceed to trial with his claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL"). (*See* Def. Mem. at 8). Equifax inaccurately claims that there is "no cause of action under the CPL." (*Id.*). Although at least two federal courts within this District have held that a consumer-plaintiff may bring a Pennsylvania CPL claim along with an FCRA claim alleging that a CRA reported inaccurate credit information about him or her,[17] Plaintiff hereby withdraws this statutory claim. Accordingly, that issue is moot for purposes of this Motion.

### V. CONCLUSION

For the reasons stated above, this Court should deny Equifax's Motion for Summary Judgment.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

BY: _____
JAMES A. FRANCIS, ESQUIRE
MARK D. MAILMAN, ESQUIRE
JOHN SOUMILAS, ESQUIRE
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

Dated: March 29, 2006

---

[17] *See Lawrence v. Trans Union*, LLC, 296 F. Supp. 2d 582, 591-92 (E.D. Pa. 2003); *Crane v. Trans Union, LLC*, 282 F. Supp.2d 311, 322 (E.D. Pa. 2003).